UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GARY HICKS,

    Plaintiff,

v.                                          Case No: 6:16-cv-1226-Orl-41TBS

VORTEX MARINE CONSTRUCTION,
INC.,

    Defendant.
_____

## REPORT AND RECOMMENDATION

Pending before the Court is the parties' Joint Motion for Approval of Settlement and Dismissal with Prejudice (Doc. 30). Upon due consideration I respectfully recommend that the motion be **DENIED**.

## I. Background

Plaintiff Gary Hicks sues Defendant Vortex Marine Construction, Inc. for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Doc. 1). Plaintiff alleges that he was employed by Defendant as a heavy equipment operator from about December 4, 2015 through May 14, 2016 (Id., ¶ 8; Doc. 15, ¶ 4). He says that Defendant compensated him at the rate of $30 per hour plus a weekly per diem of $250 (Doc. 1, ¶ 10). For hours in excess of 40 per week, Plaintiff reports that he was paid $45 per hour, which is less than one and one-half his regular rate of pay (Id., ¶ 11). Plaintiff arrives at this conclusion by combining his regular hourly rate with his per diem to arrive at an effective rate of $36.25 per hour worked (Doc. 15, ¶ 5). Plaintiff seeks an award of back pay equal to the difference between his correct overtime rate and the overtime rate he was actually paid (Doc. 1, ¶ 18). In his answers to the Court's interrogatories, Plaintiff said

he is owed $2,157.40 in unpaid wages plus an equal amount in liquidated damages, together with attorneys' fees and costs (Doc. 15, ¶ 7). In their motion, the parties represent that they have reached an amicable settlement of Plaintiff's claim (Doc. 30, ¶ 3), whereby Defendant will pay Plaintiff:

- $1,400 as unpaid wages;
- $1,400 as liquidated damages;
- $7,000 as attorney's fees and costs; and
- $200 for a general release.

(Id.). In return, Plaintiff has agreed to non-monetary concessions, some of which I find unacceptable.

## II. Legal Standard

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) (alternation in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally-mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived."

Barrentine, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." Id. (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1946)).

The Parties seek review to determine whether their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354-55 (11th Cir. 1982). If a settlement is not one supervised by the Department of Labor, the only other route for compromise of FLSA claims is in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Id. at 1353 (citing Schulte, Inc. v. Gangi, 328 U.S. 108, 113 (1946)). "Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." Id. at 1354.

In determining whether a settlement is fair and reasonable, the Court considers the following factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel." Hamilton v. Frito-Lay, Inc., No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." Id. (citing Cotton v. Hinton, 559 F.2d 1331 (5th Cir. 1977)).

The settlement of FLSA claims is unlike the settlement of most other civil cases. As Judge Merryday observed in Moreno v. Regions Bank, when the court evaluates a proposed settlement it "proceeds from the kindred notions of 'fairness' and 'full compensation' to the employee." 729 F. Supp. 2d 1346, 1348 (M.D. Fla. 2010). Unlike the typical civil case "an employee cannot relinquish or modify a claim under the FLSA except in exchange for 'full compensation.'" Id. And, while the exchange of general releases, agreements to keep the terms of the settlement confidential, and other non-monetary terms are commonly included in agreements to settle most civil disputes, in FLSA cases these non-monetary terms:

> [A]ffect[] both the 'fairness' and the 'full compensation' component of a settlement. A gratuitous concession in exchange for the required payment is "unfair" because (1) the FLSA obligates the employer without exception or condition to pay the full amount owed and (2) a valuable, non-cash concession extended to the employer in exchange for otherwise "full compensation" effectively reduces the employer's payment by an amount equal to the value of the concession (and accordingly reduces the employer's payment to less than "full compensation").

Id. at 1348-49.

### III. Discussion

#### A. Beneficiaries of the Settlement Agreement

The Settlement Agreement is between Plaintiff and the "Company," which is defined as Defendant "on behalf of itself and parents, subsidiaries, and affiliates and each of their respective present and former employees, officers, directors, owners, shareholders and agents, individually and in their official capacities." (Doc. 30-1 at 1). The non-parties are not identified, they have not signed the agreement, and no reason has been provided for their inclusion in the settlement. As District Judge Dalton observed in Arguelles v. Noor Baig, Inc., "a general release may not be used to release a non-party.

Even if the parties were to focus the release just to FLSA claims, the Court remains skeptical as to the propriety of releasing FLSA claims against a non-party." Case No. 6:16-cv-2024-Orl-37TBS (M.D. Fla. Feb. 24, 2017) (Doc. 19 at 3) (footnote omitted). Regardless of whether this Court agrees with Judge Dalton, I cannot recommend approval of this agreement unless the parties first satisfy the Court that Defendant provided Plaintiff a complete list of names and addresses of everyone included in the definition of the "Company" so that he could make a knowing and intelligent decision whether to sign the settlement agreement. The same information should be provided to the Court for use in evaluating the reasonableness of the agreement. For this reason, I recommend the Court reject the parties' settlement agreement.

### B. Settlement Amount

This case involves a bona fide dispute regarding issues of FLSA liability. The parties are both represented by counsel of their own choosing. Plaintiff acknowledges in the parties' Settlement Agreement that he is receiving "payment in full for [his] claims for unpaid wages, liquidated damages and his general release." (Doc. 30-1, ¶ 2). And, the parties aver that: "Plaintiff and Defendant are satisfied with the settlement. Plaintiff and Defendant were counseled by their respective attorneys and preferred to amicably conclude the current litigation while taking into account the cost and time associated with the ongoing defense of this case. Additionally, the parties have also taken into account the uncertainty and risks inherent to any litigation." (Doc. 30 at 3). Ordinarily, this would satisfy me as to the reasonableness of the settlement amount. But, in this case, I have concerns because, although the page numbers are sequential, there appears to be at least one line missing from paragraph 2: "Hicks will [...] witholdings), representing unpaid overtime wages and a non-payroll style check in the gross amount of $1,600.00 (with no

withholdings), representing liquidated damages of $1,400 plus $200 for his general release ...") (Doc. 30-1 at 1-2). Without knowing what information is missing, I cannot recommend approval of the settlement amount.

### C. No Re-Employment

In paragraph seven of the Settlement Agreement Plaintiff agrees that he will not "provide and services to, or be employed by the Company or its affiliates." (Doc. 30-1, ¶ 7). He is also agreeing not to "seek employment with, or otherwise seek to perform services for, the Company or any of their subsidiaries, divisions, related companies, or controlling shareholders (direct or indirect) at any time." (Id.). Given the breadth of the definition of the "Company," I am not sure what this additional language adds, but clearly, it is intended to broaden the scope of the agreement to even more unidentified non-parties who have not signed the agreement or provided consideration for whatever benefit this provision bestows on them. The parties provide no explanation for the inclusion of these non-parties in their agreement and I have no reason to believe their identities have been disclosed to Plaintiff.

Paragraph seven of the agreement continues: "In the event that [Plaintiff] is inadvertently employed by any of the foregoing (including as an independent contractor), he will promptly notify the employing person or entity of his obligation to resign from such employment, and the employing entity shall have the right to require his resignation forthwith." (Id.). This raises more questions including why Plaintiff should be required to make this agreement to obtain wages and liquidated damages he is legally entitled to? What value have the parties assigned to this provision? How is Plaintiff supposed to know who these unidentified persons and entities are? To what extent does this term restrict Plaintiff's ability to obtain employment?

Based upon my concerns about paragraph seven, I recommend that the parties' settlement agreement be rejected.

### D. General Release

The Settlement Agreement includes Plaintiff's general release of the Company along with its:

> [P]arent companies, subsidiaries, divisions, affiliates, related companies, predecessors, successors, heirs, executors, administrators, assigns, shareholders (direct or indirect), directors, officers, employees, agents, and attorneys (and the shareholders (direct or indirect), directors, officers, employees, agents, and attorneys of such parent companies, subsidiaries, affiliates, and related companies), and all persons acting by, through, under, or in concert with any of them, and their respective heirs, executors, administrators, successors, and assigns (the Company and the foregoing other person and entities are hereinafter defined separately and collectively as the "Company's Releasees")

(Doc. 30-1, ¶ 10). The first problem I have with this release is that I have no idea who is included in the definition of the "Company's Releasees," and I have no reason to believe Plaintiff knows who he is releasing.

Second, some judges approve broad general releases which contemplate all types of claims, including non-wage claims, so long as the release is supported by additional consideration. See, e.g., Bright v. Mental Health Res. Ctr., Inc., No. 3:10-cv-427-J-37TEM, 2012 WL 868804, at *5 (M.D. Fla. Mar. 14, 2012). Other judges only approve releases that are narrowly tailored to the wage claims asserted in the complaint. See, e.g., Heath v. Hard Rock Cafe Int'l (STP), Inc., No. 6:10-cv-344-Orl-28KRS, 2011 WL 5877506, at *4 (M.D. Fla. Oct. 28, 2011). Still, other judges disapprove of any release in an FLSA settlement as per se unreasonable no matter its scope. See, e.g., Colon v. Garda CL Se., Inc., No. 6:14-cv-1777-Orl-37KRS, 2015 U.S. Dist. LEXIS 94775, at *3 n. 1

(M.D. Fla. July 21, 2015). Regardless of what this Court would ordinarily accept, I have never seen a court in this district approve a release as broad as this one.

This Court has observed that "[t]he inclusion of a release in an FLSA settlement agreement does not necessarily render the agreement unfair, but the Court must be able to evaluate the value of the released claims." Grissam v. Ranraj Singh Dhanju I, Inc., No. 6:16-cv-1368-Orl-41KRS, 2016 WL 7210946, at *1 (M.D. Fla. Dec. 13, 2016). In the same case, this Court said "[w]here the parties include a broad, general release, releasing any and all claims, valuation of those unknown claims is nearly impossible, and therefore, such a release 'precludes a fairness determination.'" Id. (quoting Shearer v. Estep Const., Inc., No. 6:14-cv-1658-Orl-41GJK, 2015 WL 2402450, at *3 (M.D. Fla. May 20, 2015)). Given the scope of the release in this case, I am unable to discern whether $200 is fair consideration for the release of so many unknown persons and entities. Accordingly, I recommend that the parties' Settlement Agreement be rejected.

Third, if the release in paragraph ten was not broad enough, in the preceding paragraph Plaintiff:

> [R]epresents, warrants, and agrees that the amounts paid by or on behalf of the Company … represent payment-in-full of (a) the Alleged Compensation Amount; and (b) any and all [sic] others amounts, including but not limited to alleged unpaid wages, liquidated damages, costs and attorney's fees, to which [Plaintiff] claims or may claim entitled as against the Company, including amounts pursuant to the Fair Labor Standards Act of 1938, as amended.

(Doc. 30-1, ¶ 9). This appears to be an attempt to create an estoppel against Plaintiff bringing claims against anyone included within the definition of the "Company." Again, without knowing who that is, I fail to understand how Plaintiff could knowingly and intelligently agree to this provision.

Fourth, as if the foregoing was not sufficient to protect Defendant and all of the other unidentified releasees, the Settlement Agreement includes Plaintiff's representation and undertaking in paragraph twelve that:

> [H]e has never commenced nor filed, and covenants and agrees never to commence, file, aid, or in any way prosecute or cause to be commenced or prosecuted against the Company's Releasees, or any of them, any action, charge, complaint, or other proceeding, whether administrative, judicial, legislative, or otherwise, including, but not limited to, any action or proceeding for attorneys' fees, experts' fees, disbursements, or costs, based upon or seeking relief on account of actions or failure to act by the Company's Releasees, or any of them, which may have occurred or failed to occur before his execution of this Agreement.

(Doc. 30-1, ¶ 12). Then, apparently because Defendant is still unsure about the degree of protection afforded by Plaintiff's general release, the Settlement Agreement provides that Plaintiff:

> [R]epresents and warrants that no other persons are entitled to assert any claim based on or arising out of any alleged discriminatory, unlawful, wrongful, tortious, or other conduct against him by the Company's Releasees, or any of them, including, but not limited to, any and all claims for attorneys' fees, experts' fees, or damages resulting as a consequence thereof, based upon or seeking relief on account of the actions or failure to act by the Company's Releasees which may have occurred or failed to occur before his execution of this Agreement. [Plaintiff] further represents and warrants that he has not assigned and will never assign any such claim, and that in the event any such claim is filed or prosecuted by any other person or entity, he will cooperate fully with the Company's Releasees and will move immediately to withdraw his name and to disassociate himself completely from any such claim, will request such person or entity to withdraw such claim with prejudice, and will not voluntarily cooperate with or testify on behalf of the person or entity prosecuting such claim.

(Id., ¶ 13).

The repetition and overbreadth of these terms in the Settlement Agreement suggests to me that Defendant and unknown related persons and entities must believe

- 9 -

Plaintiff has valuable claims against them which have yet to be asserted. Regardless of whether this is correct, I cannot, in good conscience, recommend approval of an FLSA settlement agreement with what I consider to be such grossly overreaching provisions.

### E. Confidentiality

The Settlement Agreement imposes strict confidentiality on Plaintiff (Id., ¶ 14). Parties frequently include confidentiality provisions in their FLSA settlement agreements and those provisions are regularly rejected by the courts. Housen v. Econosweep & Maint. Serv., Inc., No. 3:12-cv-461-J-34TEM, 2013 WL 2455958, at *2 (M.D. Fla. June 6, 2013); DeGraff v. SMA Behavioral Health Serv., Inc., No. 3:12-cv-733-J-32TEM, 2013 WL 2177984, at *4 (M.D. Fla. March 5, 2013); Crabtree v. Volkert, Inc., Civil Action No. 11-0529-WS-B, 2013 WL 593500, at *4 (S.D. Ala. Feb. 14, 2013); Parker v. Encore Rehab., Inc., Civil Action No. 12-00539-KD-B, 2012 WL 6680311, at *4-5 (S.D. Ala. Dec. 21, 2012); Webb v. CVS Caremark Corp., No. 5:11-cv-106 (CAR), 2011 WL 6743284, at *1-2 (M.D. Ga. Dec. 23, 2011); Hamilton v. Brinker Intern'l Payroll Co., L.P., 5:10-cv-187-Oc-37TBS, 2011 WL 6032945, at *1 (M.D. Fla. Dec. 5, 2011); Walker v. U.S. Title Loans, Inc., No. 2:10cv-428-WC, 2011 WL 1789976, at *2 (M.D. Ala. May 10, 2011); Dees v. Hydradry, 706 F. Supp. 2d 1227, 1242-43 (M.D. Fla. 2010). As one court explained:

> In most cases when parties settle, the Court does not examine or approve their agreements; the settlements are purely private contracts. In the typical FLSA case, however, a settlement agreement only available through *in-camera* inspection does not comport with the public's right of access to a judicial proceeding, which right is "an essential component of our system of justice [and] instrumental in securing the integrity of the process." Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1311 (11th Cir.2001). The judge's "approving" a settlement constitutes a "public act," and the public "has an interest in knowing what terms of settlement a federal judge would approve." Jessup v. Luther, 277 F.3d 926, 929 (7th Cir.2002). As an active component of the judge's decision, the settlement agreement

is presumptively a public record. See Brown v. Advantage Eng'g, Inc., 960 F.2d 1013, 1016 (11th Cir.1992) ("Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case."); Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 343 (3d Cir.1986) ("[T]he common law presumption of access applies to motions filed in court proceedings and to the settlement agreement ... filed and submitted to the district court for approval.") The public enjoys the right both to attend a trial or hearing and to inspect and copy a judicial record.

The presumption that the record of a judicial proceeding remains public "is surely most strong when the 'right at issue is of a 'private-public character,' as the Supreme Court has described employee rights under the FLSA.' " Stalnaker v. Novar Corp., 293 F.Supp.2d 1260, 1264 (M.D.Ala.2003) (quoting Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 708 (1945)). "Sealing an FLSA settlement agreement between an employer and employee, reviewing the agreement *in camera,* or reviewing the agreement at a hearing without the agreement appearing in the record (and in any event precluding other employees' and the public's access to, and knowledge of, the agreement) thwarts Congress's intent both to advance employees' awareness of their FLSA rights and to ensure pervasive implementation of the FLSA in the workplace." Dees v. Hydradry, Inc., 706 F.Supp.2d 1227, 1245 (M.D.Fla.2010). Furthermore, reviewing a FLSA settlement agreement *in camera* conflicts with the public's access to judicial records, frustrates appellate review of a judge's decision to approve (or reject) an FLSA compromise, contravenes congressional policy encouraging widespread compliance with the FLSA, and furthers no judicially cognizable interest of the parties. See id. at 1245 n. 21 ("*In camera* examination equally frustrates appellate review of both a seal and a judge's approval of a settlement agreement because the district court reviews a settlement agreement *in camera* without articulating "specific findings" to justify a seal."); Webb v. CVS Caremark Corp., No. 5:11-cv-106, 2011 WL 6743284, at *2 (M.D.Ga. Dec. 23, 2011) ("There is strong support that FLSA settlement agreements should never be sealed or reviewed *in camera*.") (citing Dees, 706 F.Supp.2d at 1245); but see Ammirati v. Luteran Servs. Fla., Inc., No. 2:09-cv496, 2010 WL 148724, at *1 (M.D.Fla. Jan. 13, 2010) (approving FLSA settlement agreement reviewed via *in-camera* inspection); Nunnink Wholesale Pictures & Mirrors, LLC, No. 2:09-cv-365, 2010 WL 338098, at *2 (M.D.Fla. Jan. 22, 2010) (same). With these standards in mind, the Parties'

> assertion that an injustice will be caused if the proposed
> Agreement were placed in the public record is nowhere near
> sufficient to negate the preference for the right of public
> access.

Nichols v. Dollar Tree Stores, Inc., No. 1:13-cv-88 (WLS), 2013 WL 5933991, at *1 (M.D. Ga. Nov. 1, 2013). I recommend the Court reject the Settlement Agreement based upon the inclusion of the requirement that Plaintiff keep its terms confidential.

### F. Non-Disparagement

In paragraph fifteen of the Settlement Agreement, Plaintiff promises not to disparage the Company "verbally, in writing, through gesture or other non-verbal means (such as winks or nods of the head), or otherwise." (Doc. 30-1, ¶ 15). This clause places a prior restraint on Plaintiff's ability to speak freely about the case, which contravenes public policy and the protections of the First Amendment. Courts throughout this Circuit have struck non-disparagement provisions in FLSA settlement agreements finding "them to constitute a judicially imposed prior restraint in violation of the First Amendment." Loven v. Occoquan Grp. Baldwin Park Corp., No. 6:14-cv-328-Orl-41TBS, 2014 WL 4639448, at *3 (M.D. Fla. Sept. 16, 2014); Nichols, 2013 U.S. Dist. LEXIS 156754, at *10-11; see also Degraff, 945 F. Supp. 2d at 1330; Housen, 2013 U.S. Dist. LEXIS 79706, at *5-6; Valdez v. T.A.S.O Props., Case No. 8:09-cv-2250-T-23TGW, 2010 U.S. Dist. LEXIS 47952, at *4 n.1 (M.D. Fla. April 28, 2010).

In my view, muzzling a former employee who brings a successful FLSA claim also violates the public policy underlying the statute. If the purpose of the law is to protect workers, then they need to know what their rights are, and other potential claimants who are similarly situated to Plaintiff are entitled to know that they too, may have rights against Defendant. Moreover, the Settlement Agreement is a part of the Court record, available to anyone who wishes to view it. The parties have not explained why it is appropriate for

Plaintiff to give up his right to discuss a matter of public record. Lastly, if this restraint on Plaintiff's speech was appropriate, then the parties have not shown what he is receiving as consideration for this compromise of his rights. Therefore, I recommend the Court reject the parties' Settlement Agreement.

### G. Pension

The Settlement Agreement provides that none of the payments to Plaintiff "shall constitute or be considered 'wages,' 'earnings' or 'compensation' for any purpose under any retirement plan, welfare plan, stock purchase plan, bonus plan, employee stock ownership plan or vacation policy of the Company." (Doc. 30-1, ¶ 17). If Plaintiff was a participant in any of the plans or policies covered by this clause, then no reason has been provided why he should compromise his right to those benefits. If he is not a member, then the clause has no purpose and does not belong in the Settlement Agreement. Either way, I recommend the agreement be rejected based upon the inclusion of this provision.

### H. Attorney's Fees

With respect to the agreed-to sum for attorneys' fees and costs, the parties represent that this was negotiated separately. See Bonetti v. Embarq Mgmt Co., 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). Upon review, I find the amount is not so excessive as to be considered unreasonable, especially in view of the amount of litigation reflected on the docket.

### IV. Recommendation

Upon consideration of the foregoing, I respectfully recommend that the parties' Joint Motion for Approval of Settlement and Dismissal with Prejudice (Doc. 30) be **DENIED**.

## V. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. <u>See</u> 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on May 4, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record